**SIERRA CLUB, a nonprofit California corporation, Plaintiff–Appellee,**

v.

**Clayton K. YEUTTER, in his official capacity as Secretary of Agriculture; Max Peterson, in his official capacity as Chief of the Forest Service, Defendants–Appellants,**

**Mountain States Legal Foundation, a nonprofit Colorado corporation, on behalf of named and unnamed members; Colorado Cattlemen's Association, a nonprofit Colorado corporation; Colorado Farm Bureau, a nonprofit Colorado corporation; National Cattlemen's Association, a nonprofit Colorado corporation; Colo. Water Congress; Colorado Water Conservation Board; The City and County of Denver, acting By and Through its Board of Water Commissioners, Defendants–Intervenors–Appellants.**

**Nos. 88–2777, 88–2871, 88–2918, 88–2920 and 88–2922.**

United States Court of Appeals, Tenth Circuit.

Aug. 10, 1990.

Lori Potter, Sierra Club Legal Defense Fund, Denver, Colo., for plaintiff-appellee Sierra Club.

Robert L. Klarquist, Atty., (Peter R. Steenland, Jr., Edward J. Shawaker, Attys., Land and Natural Resources Div.), Donald A. Carr, Acting Asst. Atty. Gen., Washington, D.C., Michael J. Norton, U.S. Atty., John R. Hill, Jr., Atty., Land and Natural Resources, Denver, Colo., and Stuart L. Shelton, Office of General Counsel, Dept. of Agr., Washington, D.C., for defendants-appellants Yeutter and Peterson.

Lois Witte, Deputy Atty. Gen., Natural Resource Section, Denver, Colo., for defendant-intervenor-appellant Colorado Water Conservation Bd.

Gregory J. Hobbs, Jr., Donna Melson Arthur & Bennett W. Raley, of Davis, Graham & Stubbs, Denver, Colo., for defendant-intervenor-appellant Colorado Water Congress.

Wayne D. Williams, Michael L. Walker & Henry C. Teigen, Counsel for City and County of Denver, acting by and through its Bd. of Water Com'rs, Denver Colo., for defendant-intervenor-appellant City and County of Denver.

Eric Twelker, Mountain States Legal Foundation, Denver, Colo., for defendants-intervenors-appellants Mountain States Legal Foundation, Colorado Cattlemen's Ass'n, Colorado Farm Bureau, and Nat. Cattlemen's Ass'n.

Christopher H. Meyer, Nat. Wildlife Federation, Boulder, Colo., for amici curiae Nat. Wildlife Federation, American Rivers, American Wilderness Alliance, Colorado Environmental Coalition, Colorado Wildlife Federation, Nat. Audubon Society, Nat. Parks and Conservation Ass'n; Southern Utah Wilderness Alliance, Trout Unlimited, and The Wilderness Society.

Kathryn A. Oberly & Kerry Edwards Cormier (John J. Rademacher, General Counsel, and Michael J. Stientjes, Asst. Counsel, American Farm Bureau Federation, Park Ridge, Ill., with them on the brief), of Mayer Brown & Platt, Washington, D.C., for amicus curiae American Farm Bureau Federation.

Before LOGAN and TACHA, Circuit Judges, and THEIS,* Senior District Judge.

TACHA, Circuit Judge.

This is an appeal from the order of the United States District Court for the District of Colorado granting the Sierra Club's request for a declaratory judgment that the Wilderness Act of 1964, Pub.L. No. 88–577, 78 Stat. 890 (codified at 16 U.S.C. §§ 1131–1136), creates federal reserved water rights in all twenty-four wilderness areas administered by the United States Forest Service ("Forest Service"). Secretary of Agriculture Yeutter and Chief of the Forest Service Peterson ("federal defendants" or "government") appeal, contending that the district court is without jurisdiction and that the district court rendered an unconstitutional advisory opinion. The federal defendants also challenge the district court's order directing the Forest Ser-

---

* The Honorable Frank G. Theis, Senior District Judge, United States District Court for the District of Kansas, sitting by designation.

vice to prepare a plan to ensure the protection of wilderness water values. The defendant-intervenor-appellants, various groups representing water development and management interests ("intervenors"), also appeal. They contend: (1) that the district court does not have jurisdiction; and (2) that the Wilderness Act does not create federal reserved water rights. We dismiss and vacate the judgment below.

## I.

Sierra Club commenced this litigation in 1984 against the Secretary of Agriculture and the Chief of the Forest Service. In its second amended complaint, the Sierra Club stated that the United States had been joined in various water rights adjudications in the Colorado state courts. The complaint alleged that the United States had not claimed any federal reserved water rights based on the Wilderness Act ("wilderness water rights") for the twenty-four wilderness areas on national forest lands. The complaint contained three requests for relief: (1) that the court "declare that the United States possesses federal reserved water rights to fulfill Wilderness Act purposes in the Colorado wilderness areas under the control of the defendants;" (2) that the defendants' failure to attempt to claim wilderness water rights in the ongoing Colorado water rights adjudications "constitutes a violation of their duties under 16 U.S.C. § 526 and the Wilderness Act, is arbitrary and capricious, and constitutes unlawfully withheld agency action in violation of the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*"; and (3) that the failure to claim wilderness water rights constituted a violation of the public trust. The complaint concluded with a request for declaratory relief, specifically "[a]n order requiring defendants to take such action as this Court finds is necessary to protect reserved rights in Colorado wilderness areas."

The federal defendants moved to dismiss the complaint for lack of jurisdiction, contending that their nonassertion of reserved water rights fell within the *Heckler v. Chaney,* 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), presumption of unreviewability. Alternatively, the federal defendants contended that the existence of reserved water rights under the Wilderness Act was uncertain and therefore that the failure to claim such rights in the Colorado proceedings was not arbitrary and capricious.

The district court denied the motion to dismiss. *Sierra Club v. Block,* 615 F.Supp. 44 (D.Colo.1985). The district court found that sections 2(a) and 4(b) of the Wilderness Act provide "clear and specific directives" requiring "the Forest Service to protect the wilderness areas, including water resources" and that the "Wilderness Act provides both legislative direction and manageable standards by which to judge the agency's failure to act in this case." *Id.* at 47–48. The district court thus concluded that the presumption of unreviewability was rebutted and that review was proper. The court deferred deciding the federal defendants' alternative argument that their failure to assert wilderness water rights was not arbitrary and capricious because the existence of wilderness water rights was uncertain.

In a subsequent decision, the district court ruled upon various motions for dismissal or for summary judgment presented by Sierra Club and the intervenors. *Sierra Club v. Block,* 622 F.Supp. 842 (D.Colo. 1985). The district court first found that Sierra Club had standing to pursue this action. *Id.* at 847–49. On Sierra Club's cross motion for summary judgment, the court held that "federal reserved water rights do exist in the designated Colorado wilderness areas." *Id.* at 851. The court held, however, that although the federal defendants are under a "general duty under the Wilderness Act to protect and preserve all wilderness resources," *id.* at 864, "[t]here is, however, no specific *statutory* duty to claim reserved water rights in the wilderness areas even though Congress impliedly reserved such rights in order to effectuate the purposes of the Act...." *Id.* (emphasis in original). The court ruled that it was without power to order the Attorney General to initiate litigation to obtain such rights in the Colorado state

court proceedings. The court explained that under the doctrine of separation of powers, it could not order the executive to litigate the wilderness water rights in the absence of a statute requiring the executive to do so. *Id.* (quoting *Sierra Club v. Department of the Interior*, 424 F.Supp. 172, 175 (N.D.Cal.1976)). The court also held that because of the controversy over the existence of federal reserved water rights under the Wilderness Act, the federal defendants had not acted arbitrarily and capriciously in failing to claim such rights. *Id.* at 864–65.

The court then stated that it "must determine whether federal defendants' failure to assert federal reserved water rights in the wilderness areas conflicts in any way with their general statutory duty to protect wilderness water resources." *Id.* at 865. The court noted that reserved water rights represent only one alternative available to the federal defendants to fulfill their statutory duty to preserve wilderness water resources. After concluding that the briefs and administrative record were not adequate to evaluate fully Sierra Club's assertion that reserved water rights were the only means to protect water resources, the court remanded the matter to the federal defendants with directions ordering them to "come forward with a memorandum explaining their analysis, final decision, and plan to comply with their statutory obligations. . . ." *Id.* Finally, the court dismissed Sierra Club's public trust doctrine claim. *Id.* at 865–66.

Following an unsuccessful attempt to appeal to this court, which was denied due to lack of finality, *Sierra Club v. Lyng*, Nos. 86–1153, 86–1154 & 86–1155 (10th Cir. Oct. 8, 1986), the Forest Service submitted the plan ordered by the district court.[1] In response, Sierra Club contended that the first report was inadequate and that the other methods of preserving wilderness water values presented in the first report were arbitrary and capricious. The intervenors also moved the district court to reconsider its earlier decision declaring the existence of federal reserved water rights under the Wilderness Act.

The district court addressed these contentions in a third decision. *See Sierra Club v. Lyng*, 661 F.Supp. 1490 (D.Colo. 1987). The court reaffirmed its earlier holding that federal reserved water rights exist under the Wilderness Act. The court held that the first report submitted by the Forest Service was "deficient in the kind of detail necessary to conduct a satisfactory review" of the agency's decision not to adjudicate federal reserved water rights based on the Wilderness Act. *Id.* at 1501. In the second portion of its plan, the Forest Service listed various non-adjudicatory methods of protecting wilderness water resources. The district court held that these alternatives, as justified in the first plan, were so inadequate as to constitute an abuse of discretion. *Id.* Accordingly, the court struck the first report and ordered the Forest Service to submit a proper plan. *Id.* at 1502.

Thereafter, the Forest Service submitted a new plan,[2] which analyzed the status of existing absolute and conditional water rights on and above the wilderness areas. The second report stated:

The Forest Service, pursuant to the Court's orders of November 20, 1986 and June 3, 1987, examined the 24 wilderness areas in Colorado named in the Second Amended Complaint, to identify any threats to wilderness water resources and evaluated the various alternatives available, including claiming Federal reserved water rights, to carry out the statutory responsibility to protect wilderness resources. Our analysis did not indicate any present or foreseeable future threats to the wilderness resources which would diminish their wilderness characteristics.

---

1. United States Forest Service, *Report on Methods for Protecting Wilderness Water Resources on Lands Administered by the Forest Service, United States Department of Agriculture* (Nov. 26, 1986) [hereinafter first report].

2. United States Forest Service, *Report on Methods for Protecting Wilderness Water Resources on Lands in Colorado Administered by the Forest Service, United States Department of Agriculture* (Sept. 22, 1987) [hereinafter second report].

Second report, at 1. The second report outlined a number of options the Forest Service could use to protect wilderness water values. These included: administrative land use controls; recommendations to the President, Congress, and other agencies; recommending assertion of reserved water rights under the Organic Administration Act of 1897, 30 Stat. 34; and recommending the assertion of reserved water rights under the Wilderness Act. *See* second report, at 10–19. The filing of the second plan and its alternatives superseded the stricken first plan and the "arbitrary and capricious" alternatives contained therein.

On September 30, 1988 the district court, stating that counsel for the Sierra Club had given the court assurance that "the position of the plaintiff now is that Judge Kane's ruling constitutes a declaratory judgment on all legal issues in this case and no additional relief is sought," ruled that "all claims for relief other than the adjudicated claim for declaratory relief are dismissed," and entered final judgment.[3] *Sierra Club v. Lyng,* No. 84–M–2 (D.Colo. Sept. 30, 1988). Both the federal defendants and the intervenors appealed to this court.

## II.

The first issue we address is whether this case is properly before us. On the one hand, the federal defendants contend that the district court's declaratory judgment is an unconstitutional advisory opinion. The intervenors agree with this characterization and further contend that the district court erred in finding that judicial review is not precluded by the rule in *Heckler v. Chaney,* 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985). On the other hand, Sierra Club contends that the case is properly before us under the Administrative Procedure and Declaratory Judgment Acts. Given the present factual background and procedural posture of this case, we hold

that the issues presented are not ripe for adjudication.

The greatest difficulty presented by this case is determining the proper method of analysis. Although the doctrine of ripeness was substantially restated in the 1967 *Gardner* trilogy, *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); *Toilet Goods Association v. Gardner (Toilet Goods I ),* 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967); *Gardner v. Toilet Goods Association (Toilet Goods II ),* 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967), the doctrine's application remains a confused mix of principle and pragmatic judgment reflecting its mixture of article III case and controversy requirements with prudential restraints on the exercise of jurisdiction. The difficulty in application is aggravated in this case because Sierra Club is challenging the Forest Service's failure to act rather than a more traditional agency action.

## A. *Is There Law to Apply?*

We begin our analysis by determining whether there is any law to apply. This determination is critical in two respects: (1) it controls the availability of judicial review under section 701(a)(2) of the Administrative Procedure Act (APA), 5 U.S.C. § 701(a)(2); and (2) it establishes the framework that guides our ripeness inquiry.

### 1. Reviewability Under the APA

■ As a general matter, all agency action is presumed reviewable. *See Abbott Laboratories,* 387 U.S. at 140, 87 S.Ct. at 1510–11. Section 701(a) of the APA provides for two exceptions, however:

> This chapter applies, according to the provisions thereof, except to the extent that—
>
> (1) statutes preclude judicial review; or

---

**3.** Sierra Club did not seek to challenge the second report. Sierra Club thus has dropped its earlier request for a declaratory judgment that the Forest Service's failure to assert federal reserved water rights based on the Wilderness Act

is arbitrary and capricious. The only relief granted by the district court which remains before us on appeal is the declaratory judgment that the Wilderness Act gives rise to federal reserved water rights.

(2) agency action is committed to agency discretion by law.

5 U.S.C. § 701(a). No party contends that review is precluded explicitly by statute. We therefore turn to the subsection (a)(2) exception for "agency action ... committed to agency discretion by law." The Supreme Court defined this exception in *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), as a "very narrow exception ... applicable in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Id.* at 410, 91 S.Ct. at 820–21 (quoting in part S.Rep. No. 752, 79th Cong., 1st Sess. 26 (1945)).

In *Heckler v. Chaney*, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), the Supreme Court elaborated on the subsection (a)(2) exception, explaining:

> [E]ven where Congress has not affirmatively precluded review [under subsection (a)(1)], review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion. In such a case, the statute ("law") can be taken to have "committed" the decisionmaking to the agency's judgment absolutely. This construction avoids conflict with the the "abuse of discretion" standard of review in § 706—if no judicially manageable standards are available for judging how and when an agency should exercise its discretion, then it is impossible to evaluate agency action for "abuse of discretion."

*Id.* at 830, 105 S.Ct. at 1655. The Court thus adopted a "meaningful standards" test for determining the scope of the exception to reviewability established by section 701(a)(2).

In applying the subsection (a)(2) exception to the presumption of reviewability, *Chaney* concluded that an agency decision not to take enforcement action fell within the subsection (a)(2) exception. The Court held that agency enforcement decisions are presumptively unreviewable as "actions ... committed to agency discretion by law." *See id.* at 831, 105 S.Ct. at 1655–56.

The Court distinguished *Overton Park* and the general presumption of reviewability:

> *Overton Park* did not involve an agency's refusal to take requested enforcement action. It involved an affirmative act of approval under a statute that set clear guidelines for determining when such approval should be given. Refusals to take enforcement steps generally involve precisely the opposite situation, and in that situation we think the presumption is that judicial review is not available. This Court has recognized on several occasions over many years that an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion. This recognition of the existence of discretion is attributable in no small part to the general unsuitability for judicial review of agency decisions to refuse enforcement.

*Id.* (citations omitted). The Court reasoned that review of enforcement decisions was unsuitable for a number of reasons. First, "an agency decision not to enforce often involves a complicated balancing of a number of factors which are peculiarly within its expertise." *Id.* These factors include whether a violation has occurred, probability of success, whether action fits the agency's overall policies, and availability of agency resources. Second, agency refusal to act generally does not involve an exercise of coercive power over an individual. *Id.* at 831–32, 105 S.Ct. at 1655–56. Third, the Court drew an analogy to the decision of a prosecutor not to indict, which "has long been regarded as the special province of the Executive Branch" *Id.* at 832, 105 S.Ct. at 1656.

Although the Court interpreted the subsection (a)(2) exception to the presumption of reviewability as establishing a presumption of unreviewability in cases where the agency declined to take enforcement action, the Court was careful to state that "the presumption [of unreviewability] may be rebutted where the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers." *Id.* at 832–33, 105 S.Ct. at 1656. The

Court cited *Dunlop v. Bachowski,* 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975), as an example of a statute that established guidelines governing agency enforcement actions. The Court noted that the relevant statute provided that "[t]he Secretary shall investigate such complaint and, if he finds probable cause to believe that a violation ... had occurred ... he shall ... bring a civil action." *Chaney,* 470 U.S. at 832–33, 105 S.Ct. at 1657 (quoting 29 U.S.C. § 482). This language "indicated that the Secretary was required to file suit if certain 'clearly defined' factors were present." *Id.* at 834, 105 S.Ct. at 1657. The Court therefore concluded that "[t]he statute being administered quite clearly withdrew discretion from the agency and provided guidelines in the exercise of its enforcement power." *Id.* Finally, the Court in footnote 4 left open the possibility of judicial review where the agency refused to act because it believed it lacked jurisdiction or because it had abdicated its statutory responsibilities. *Id.* at 833 n. 4, 105 S.Ct. at 1656 n. 4 (citing *Adams v. Richardson,* 480 F.2d 1159 (D.C. Cir.1973) (en banc)).

Most recently, in *Webster v. Doe,* 486 U.S. 592, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988), the Supreme Court considered a challenge to the CIA Director's decision to terminate an employee. The relevant statute permitted the CIA Director to terminate an employee whenever the director "shall *deem* such termination necessary or advisable in the interests of the United States." *Webster,* 486 U.S. at 600, 108 S.Ct. at 2052 (emphasis in *Webster*) (quoting in part National Security Act § 102(c), 50 U.S.C. § 403(c)). The Court found that the quoted language provided "no law to apply" and held that the director's decision to terminate was unreviewable under the APA.[4] *Webster* thus stands for the proposition that where a statute provides "no substantive standards on which a court could base its review," *id.* at 600, 108 S.Ct. at 2052, then the agency action is unreviewable.

2. Application of Reviewability Standard

With this understanding of reviewability, we must determine whether the Forest Service's conduct is reviewable.

*a.* Chaney *footnote 4 exceptions permitting review.*

■ Sierra Club seeks to avoid examination of the reviewability of the Forest Service's inaction by contending that the Forest Service has either mistaken the extent of its jurisdiction or has consciously abdicated its statutory duties. Sierra Club is attempting to invoke the possible exceptions to reviewability analysis reserved by the Supreme Court in *Chaney* footnote 4. *See Chaney,* 470 U.S. at 833 n. 4, 105 S.Ct. at 1656 n. 4. We are not persuaded, however, that either exception applies. First, the Forest Service has not mistaken the extent of its jurisdiction. It does not contend that it is without jurisdiction to seek federal reserved water rights based on the Wilderness Act. The Forest Service has stated that in its view it is preferable not to seek such rights for the Colorado wilderness areas for a variety of reasons. Rather than having mistaken its jurisdiction, the Forest Service has merely declined to exercise it.

Second, we cannot say the Forest Service has " 'consciously and expressly adopted a general policy' that is so extreme as to amount to an abdication of its statutory responsibilities." *Id.* at 833 n. 4, 105 S.Ct. at 1656 n. 4 (quoting *Adams v. Richardson,* 480 F.2d 1159, 1162 (D.C.Cir.1973) (en banc)). The Forest Service argues that it has numerous other ways to protect wilderness water values in addition to seeking federal reserved water rights under the Wilderness Act. It has provided a list of these other methods and an examination of possible threats to wilderness water values. *See* second report, at 10–19. Given this record and the absence of clear statutory commands, we cannot say the Forest Service has "consciously and expressly ... abdicated its statutory responsibilities."

---

**4.** *Webster* held, however, that the relevant statute did not preclude review of constitutional claims. *Webster,* 486 U.S. at 603, 108 S.Ct. at 2053–54.

Because we determine that neither of the *Chaney* footnote exceptions are applicable, we now turn to consider whether the Forest Service's actions fall within the statutory exception to reviewability established by section 701(a)(2) of the APA.

> b. *Section 701(a)(2) exception to reviewability.*

■ As a general rule, all agency action is presumed reviewable. *See Abbott Laboratories,* 387 U.S. at 140, 87 S.Ct. at 1510–11. Section 701(a)(2) provides for an exception to review where a statute provides "no law to apply." Sierra Club cites three statutes as providing the requisite law to apply. The first statute, the Department of Agriculture Organic Act of 1944, provides:

> There are authorized to be appropriated for expenditure by the Forest Service such sums as may be necessary for the investigation and establishment of water rights, including the purchase thereof or of lands or interests in lands or rights-of-way for use and protection of water rights necessary or beneficial in connection with the administration and public use of the national forests.

16 U.S.C. § 526. Section 526 does not provide "meaningful standards" of law to apply. On its face the section merely authorizes appropriations for the Forest Service's use in investigating and establishing water rights. The provision does not command the agency to spend monies and certainly imposes no duty to actually investigate or establish water rights. As such, the statute clearly is permissive and fails to provide the necessary law under the "meaningful" or "substantive" standards tests in either *Chaney* or *Webster.*

■ Sierra Club also points to two provisions of the Wilderness Act as supplying the necessary law. The first is the congressional statement of purpose, which states in relevant part:

> [Wilderness areas] shall be administered for the use and enjoyment of the American people in such manner as will leave them unimpaired for future use and enjoyment as wilderness, and so as to provide for the protection of these areas, [and] the preservation of their wilderness character. . . .

16 U.S.C. § 1131(a). The second provision establishes guidelines for agency management of the wilderness areas.

> Except as otherwise provided in this chapter each agency administering any area designated as wilderness shall be responsible for preserving the wilderness character of the area and shall so administer such area for such other purposes for which it may have been established as also to preserve its wilderness character. Except as otherwise provided in this chapter, wilderness areas shall be devoted to the public purposes of recreation, scenic, scientific, educational, conservation, and historical use.

16 U.S.C. § 1133(b).

We agree with Sierra Club that these sections provide law to apply, albeit limited. Section 1133(b) imposes an affirmative duty on the Forest Service to administer the wilderness areas so as "to preserve [their] wilderness character." If the Forest Service were, by its inaction, to permit strip-mining, road construction, or other action directly inconsistent with the Wilderness Act, this court could review that inaction. Our *Sierra Club v. Hodel,* 848 F.2d 1068 (10th Cir.1988), decision stands for this proposition. In *Hodel,* we found law to apply in the prohibition by the Federal Land Policy and Management Act of 1976 ("FLPMA"), Pub.L. No. 94–579, 90 Stat. 2744, on "unnecessary or undue degradation" and its imposition of a duty to define and protect "roadless" areas of 5,000 or more acres having wilderness characteristics as defined by the Wilderness Act. *Id.* at 1074–76. "Roadless" was defined in the Department of Interior regulations. Because the challenge involved a road right-of-way, the "roadless" provision was directly implicated and provided judicially manageable standards. We concluded:

> Sierra Club alleges that [Bureau of Land Management] has refused to take action which would prevent a road from invading and redefining the boundaries of two [Wilderness Study Areas ("WSAs")]. The federal courts are capa-

ble of determining whether a WSA has remained "roadless," and whether the boundaries of public lands and rights-of-way will be breached. A court can measure whether the improvement of the Burr Trail will "impair the suitability of [WSAs] for preservation as wilderness" or will cause "unnecessary or undue degradation."

*Hodel,* 848 F.2d at 1076.

There is no provision similar to the "roadless" criterion in *Hodel* to support review in this case. Sierra Club can only point to the preservation language in the congressional statement of policy and the statutory management guidelines. This language, without more, does not provide meaningful or substantive standards for us to review agency land management practices unless the practices are irreconcilable with the statutory preservation mandate imposed by the Wilderness Act. The Wilderness Act does not specify guidelines for agency management of water resources and water rights; indeed, the Act does not speak to them at all. Nor does Sierra Club point to any binding regulations that limit the Forest Service's discretion in managing the wilderness waters or, more specifically, water rights in wilderness areas. *Compare* this case *with Hodel,* 848 F.2d at 1076 (FLPMA's imposition of duty to protect roadless areas with wilderness characteristics, when coupled with Interior's regulations defining roadless and Wilderness Act's definition of wilderness, gives law to apply) *and Kola, Inc. v. United States,* 882 F.2d 361, 363–64 (9th Cir.1989) (Forest Service's adoption of standards for consideration of special use permits, 36 C.F.R. § 251.54–.56, is adequate law to apply).

The danger that agencies may not carry out their delegated powers with suffi-cient vigor does not necessarily lead to the conclusion that the courts are the most appropriate body to police this aspect of their performance. That decision is in the first instance for Congress, and we therefore turn to the [Act] to determine whether in this case Congress has provided us with "law to apply." If it has indicated an intent to circumscribe agency enforcement discretion, and has provided meaningful standards for defining the limits of that discretion, there is "law to apply" under § 701(a)(2), and courts may require that the agency follow that law; if it has not, then an agency refusal to institute proceedings is a decision "committed to agency discretion by law" within the meaning of that section.

*Chaney,* 470 U.S. at 834–35, 105 S.Ct. at 1657. We do not sit as "monitors of the wisdom and soundness of Executive action," *Laird v. Tatum,* 408 U.S. 1, 15, 92 S.Ct. 2318, 2326, 33 L.Ed.2d 154 (1972), nor may we substitute our judgment for that of the agency, *cf. Overton Park,* 401 U.S. at 416, 91 S.Ct. at 823–24. Because the Wilderness Act does not provide meaningful standards to review all land and water management decisions, we hold that the Forest Service's decision to use or not to use federal reserved water rights allegedly created by the Wilderness Act is "committed to agency discretion by law," except in those situations where the agency's conduct cannot be reconciled with the Act's mandate to preserve the wilderness character of the wilderness areas. We conclude that we should not review the Forest Service's land and water management decisions unless Sierra Club has shown such an irreconcilable threat to the Wilderness Act's preservation mandate.[5]

---

5. The defendant intervenors contend that the Forest Service's inaction in this case is an agency decision not to enforce that falls within the *Chaney* presumption of unreviewability. *See Chaney,* 470 U.S. at 832, 105 S.Ct. at 1656. We reach the same result applying the *Chaney* presumption of unreviewability. The *Chaney* Court explicitly stated that "the presumption [of unreviewability] may be rebutted where the substantive statute has provided guidelines for the agency to follow in exercising its enforcement pow-ers." *Id.* at 832–33, 105 S.Ct. at 1656. We determined above that the Wilderness Act does provide guidelines the agency must follow: the agency cannot abandon, by action or inaction, the statutory mandate to preserve the wilderness characteristics of the wilderness areas. To the extent the Forest Service's inaction implicates this command of the Wilderness Act, the *Chaney* presumption of unreviewability is rebutted and we may review the agency's action. *See id.*

## B. *Is This Issue Ripe for Decision?*

■ Review of the Forest Service's inaction is available only if its inaction is irreconcilable with the Act's mandate to preserve the wilderness character of the wilderness areas. Determining whether the statutory mandate is so threatened requires evaluation of the extent and immediacy of the alleged harm, possible agency responses, and the probable efficacy of such responses. Because of the contextual nature of such an inquiry, we must determine whether the challenge is ripe for adjudication at this time.

### 1. The Ripeness Standard

The law of ripeness was authoritatively restated by the Supreme Court in *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). *Abbott Laboratories* involved a challenge brought by pharmaceutical manufacturers to FDA regulations requiring the use of the "established name" in addition to the proprietary or trade name any time those latter names were used. The manufacturers contended that the FDA Commissioner had exceeded his authority. The Court concluded that the challenge was ripe and the regulation reviewable. In reaching this result, the Court held that the purpose of the ripeness doctrine is:

> to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.

*Abbott Laboratories*, 387 U.S. at 148–49, 87 S.Ct. at 1515. The Court proposed a two-factor test to guide the ripeness inquiry: "The problem is best seen in a two-fold aspect, requiring us to evaluate both the fitness of the issue for judicial resolution and the hardship to the parties of withholding judicial consideration." *Id.* at 149, 87 S.Ct. at 1515. In determining whether an issue is fit for judicial resolution, the Court considered whether the is-

sue was purely legal and whether the agency action was final. *Id.* at 149–52, 87 S.Ct. at 1515–17. In evaluating possible hardship to the parties the Court considered whether the regulations had: (1) a direct impact on the day-to-day business activities of the parties challenging the regulations; and (2) the possible harms to the parties of delaying consideration. *Id.* at 152–55, 87 S.Ct. at 1517–19. Although the FDA had not yet enforced the regulations, the Court concluded that the case was ripe because the legislation at issue produced "an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance...." *Id.* at 153, 87 S.Ct. at 1518.

In *Toilet Goods Association v. Gardner (Toilet Goods I)*, 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967), the Court applied the same test, but with a different result. *Toilet Goods I* involved a challenge by manufacturers to an FDA regulation permitting the FDA Commissioner to suspend certification if FDA inspectors were refused access to manufacturing facilities and certain records. As in *Abbott Laboratories*, the Court found the issue presented was purely legal and also constituted "final agency action." *Id.* at 162–63, 87 S.Ct. at 1523–24. Nevertheless, the Court found that the issue was not fit for judicial resolution.

> These points which support the appropriateness of judicial resolution are, however, outweighed by other considerations. The regulation serves notice only that the Commissioner *may* under certain circumstances order inspection of certain facilities and data, and that further certification of additives *may* be refused to those who decline to permit a duly authorized inspection until they have complied in that regard. At this juncture we have no idea whether or when such an inspection will be ordered and what reasons the Commissioner will give to justify his order. The statutory authority asserted for the regulation is the power to promulgate regulations "for the efficient enforcement" of the Act, § 701(a). Whether the regulation is justified thus depends not only, as petition-

ers appear to suggest, on whether Congress refused to include a specific section of the Act authorizing such inspections, although this factor is to be sure a highly relevant one, but also on whether the statutory scheme as a whole justified the promulgation of the regulation. This will depend not merely on an inquiry into statutory purpose, but concurrently on an understanding of what types of enforcement problems are encountered by the FDA, the need for various sorts of supervision in order to effectuate the goals of the Act, and the safeguards devised to protect legitimate trade secrets. We believe that judicial appraisal of these factors is likely to stand on a much surer footing in the context of a specific application of this regulation than could be the case in the framework of the generalized challenge made here.

*Id.* at 163–64, 87 S.Ct. at 1524 (emphasis in original; citations omitted). The Court cautioned against decision where the harm was contingent upon uncertain or speculative future administrative action. With respect to the second *Abbott Laboratories* factor, the Court found that the regulation in *Toilet Goods I* did not constitute the type of direct interference in day-to-day business that demonstrates hardship to the parties. The Court also emphasized that no irremediable adverse consequences flowed from postponing judicial review pending the actual invocation of the access regulations by the FDA. *See id.* at 165, 87 S.Ct. at 1525.

*Abbott Laboratories* establishes the central purpose of the ripeness doctrine and provides a two factor test to guide its application. *Toilet Goods I* amplifies the decision in *Abbott Laboratories* and cautions against a mechanical interpretation of the two factor test, emphasizing instead the inappropriateness of judicial intervention where administrative action is contingent and dependent on context. This flexible approach has continued in cases applying *Abbott Laboratories*. In *Wheeler v. Barrera*, 417 U.S. 402, 94 S.Ct. 2274, 41 L.Ed.2d 159 (1974), the Supreme Court found that a challenge to Missouri's compliance with Title I of the Elementary and Secondary Education Act of 1965, Pub.L. No. 89–10, 79 Stat. 27, was ripe while an Establishment Clause challenge was not. The Court emphasized that the state could comply with Title I in several different ways and that the constitutional questions "may vary according to the precise contours of the plan that is formulated." *Id.* at 426, 94 S.Ct. at 2287. The Court declined to address the Establishment Clause issue until the state adopted its plan. In *Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979), the Court found first and fourteenth amendment challenges to the Arizona Agricultural Employement Relations Act, Ariz.Rev.Stat.Ann. §§ 23–1381 to 23–1395 (Supp.1978), ripe because of their chilling effect upon speech, but held that challenges to a provision permitting employers to refuse labor organizations access to employees was not ripe because it was impossible to know how access would be denied. "We can only hypothesize that such an event will come to pass, and it is only on this basis that the constitutional claim could be adjudicated at this time." *Id.* at 304, 99 S.Ct. at 2312. Adjudication was inappropriate until the labor organizations could "assert an interest in seeking access to particular facilities as well as a palpable basis for believe that access will be refused." *Id.*

In *Pacific Gas & Electric Co. v. State Energy Resources Conservation & Development Commission*, 461 U.S. 190, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983), the Court considered challenges to California's moratorium on nuclear power plant construction, which would last until the named Commission found "that the United States through its authorized agency has approved and there exists a demonstrated technology for the disposal of high-level nuclear waste," *id.* at 198, 103 S.Ct. at 1719 (quoting Cal.Pub.Res.Code Ann. § 25524.2(a) (West 1977 & Supp.1983)), and that on a case-by-case basis there is adequate capacity for storage of spent fuel rods, *id.* at 197, 103 S.Ct. at 1718–19 (citing Cal.Pub.Res.Code Ann. § 25524.1(b) (West 1977 & Supp.1983)). The Court found that

the challenge to section 25524.2 was ripe because it was predominantly legal and delay would work a substantial hardship to the parties. *Id.* at 201–02, 103 S.Ct. at 1720–21. The challenge to the section 25524.1(b) storage regulations, however, was not ripe. Particularly significant in the Court's view was the fact that section 25524.1(b) operated on a case-by-case basis and that "we cannot know whether the Energy Commission will ever find a nuclear power plant's storage capacity to be inadequate." *Id.* at 203, 103 S.Ct. at 1721.

Taken together, *Abbott Laboratories, Toilet Goods I, Wheeler, Babbitt,* and *Pacific Gas* define the contours of the ripeness doctrine. *Abbott Laboratories* establishes the test; the other cases guide our interpretation of the two factors and caution against a rigid or mechanical application of a flexible and often context-specific doctrine.

**2. Application of the Ripeness Standard**

■ With this understanding of the ripeness doctrine, we consider Sierra Club's request for a declaratory judgment that the Wilderness Act establishes federal reserved water rights. Because we can only review Forest Service actions that are irreconcilable with the statutory preservation mandate, the question thus presented to us is whether the Forest Service's failure to assert wilderness water rights is irreconcilable with its duties under the Wilderness Act.

■ We begin our ripeness analysis by applying the two factor *Abbott Laboratories* test. Under the fitness for judicial resolution factor, the Court in *Abbott Laboratories* considered both the legal nature of the question presented and the finality of the administrative action in making its decision. One aspect of the question presented by Sierra Club—whether the Wilderness Act creates federal reserved water rights—is undoubtedly legal. *See, e.g., United States v. New Mexico,* 438 U.S. 696, 698, 98 S.Ct. 3012, 3013, 57 L.Ed.2d 1052 (1978) (scope of federal reserved water rights turns on congressional intent); *Cappaert v. United States,* 426 U.S. 128,

138, 96 S.Ct. 2062, 2069, 48 L.Ed.2d 523 (1976) (reserved water rights can arise by implication from reservations of land). The other aspect of the question presented to us—whether federal reserved water rights are necessary to preserve the wilderness characteristics of the wilderness areas—is either a question of fact or a mixed question of law and fact. Although Sierra Club submitted affidavits alleging that federal reserved water rights are necessary to preserve the wilderness characteristics of the Colorado wilderness areas, the Forest Service's second report generally denies the existence of any threat to the wilderness areas, *see* second report, at 5–10, apps. II, III, and asserts that other administrative measures could adequately address the preservation of wilderness characteristics. *See id.* at 10–18. Where disputed facts exist and the issue is not purely legal, greater caution is required prior to concluding that an issue is ripe for review. *See Wheeler,* 417 U.S. at 426–27, 94 S.Ct. at 2287–88 (legal implications may vary with contours of state's plan); *Toilet Goods I,* 387 U.S. at 163–64, 87 S.Ct. at 1524–25 (validity of regulation, enacted pursuant to statute permitting promulgation of regulations "for the efficient enforcement" of the act in question, depends in part on factual basis asserted in justification of regulation).

In assessing the fitness for judicial resolution factor of the *Abbott Laboratories* test, we also consider the finality of the Forest Service's conduct. Administrative finality is interpreted pragmatically. *Abbott Laboratories,* 387 U.S. at 149, 87 S.Ct. at 1515–16. An administrative decision is final when it is definitive rather than tentative, *id.* at 151, 87 S.Ct. at 1516–17, when it has a "direct and immediate ... effect on the day-to-day business" of the parties, *id.* at 152, 87 S.Ct. at 1517, and when it has "the status of law" and requires immediate compliance, *id.* In *FTC v. Standard Oil Co.,* 449 U.S. 232, 239–40, 101 S.Ct. 488, 493, 66 L.Ed.2d 416 (1980), the Court heavily emphasized that an administrative complaint filed by the FTC was not "definitive" final agency action. The Court held that a complaint served merely to institute agency

action and had "no legal force comparable to that of the regulation at issue in *Abbott Laboratories.*" *Id.* at 242, 101 S.Ct. at 494. More recently, in *Lujan v. National Wildlife Federation*, 496 U.S. ——, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990), the Supreme Court concluded that the Department of the Interior's "land withdrawal review program," which involved hundreds of decisions reclassifying federal lands, did not constitute " 'agency action' within the meaning of [5 U.S.C. section] 702, much less 'final agency action' within the meaning of [5 U.S.C. section] 704." 496 U.S. at ——, 110 S.Ct. at·3189. Instead, the Court ruled that the individual classification decisions were the final agency action.

In light of these cases, the finality of the Forest Service's action in this case is uncertain. The Forest Service's principal position is not that federal reserved water rights do not exist, but rather that their assertion at this time is unnecessary and possibly counterproductive. Indeed, the Forest Service stated in the second report that the assertion of federal reserved water rights based on the Wilderness Act was a possible option.[6] *See* second report, at 14. It is thus difficult to say that the Forest Service has reached a "final decision" given its possible acceptance of a wilderness water right in an appropriate case.

Even if we were to rule in favor of Sierra Club's request for a declaratory judgment that the Wilderness Act creates federal reserved water rights, the Forest Service is not obligated to assert those rights in the absence of a threat to the wilderness characteristics of the Colorado wilderness areas. Sierra Club could thus be forced to litigate once again to show that the Forest Service's inaction violated the preservation duty imposed by the Act. The Court has cautioned against finding finality where judicial "[i]ntervention leads to piecemeal review which at the least is inefficient and upon completion of the agency process might prove to have been unnecessary." *Standard Oil Co.*, 449 U.S. at 242, 101

S.Ct. at 494 (citing *McGee v. United States*, 402 U.S. 479, 484, 91 S.Ct. 1565, 1568–69, 29 L.Ed.2d 47 (1971); *McKart v. United States*, 395 U.S. 185, 195, 89 S.Ct. 1657, 1663, 23 L.Ed.2d 194 (1969)). In this case, because of our limited scope of review, the possibility that the Forest Service's position may change when presented with an actual case of imminent harm, and the possibility of piecemeal litigation, we find that this case is not fit for judicial resolution at this time.

We next apply the second factor of the *Abbott Laboratories* test, which turns on the hardship to the parties of withholding judicial consideration. We conclude that delaying consideration until there is a more imminent threat to wilderness water values does not impose a substantial hardship on the parties. Such delay benefits the government by allowing it to pursue its alternative program of protecting wilderness water values. Nor does such a delay prejudice Sierra Club, which can seek judicial review when a threat to wilderness statutory mandate is imminent.

Deferring a decision is even more compelling given the provision in Colorado water law permitting parties asserting a claim to water rights to intervene in a general water rights adjudication during that calendar year while still preserving their relative priority date vis-a-vis the other parties in the adjudication. *See U.S. v. Bell*, 724 P.2d 631, 641–42 (Colo.1986) (en banc); Colo. Rev.Stat. § 37–92–306 (1973). When and if a water development claim that may threaten wilderness water values is filed, and the Forest Service does not assert a federal reserved water right based on the Wilderness Act, and furthermore such failure to assert the reserved water right is irreconcilable with the Forest Service's duty to protect wilderness characteristics, then the Sierra Club may either intervene in the state water proceeding as appropriate under state law or may seek judicial review of the Forest Service's failure to act in federal court. At that time the record will be more

---

**6.** We note, however, that this statement, while not inconsistent with the Forest Service's initial position, was reached after substantial proceedings had already taken place in the district court.

fully developed and the courts can better determine whether the Forest Service's proposed alternatives to the use of wilderness water rights are adequate to reconcile its actions with its obligations under the Act. If the proposed alternatives are not adequate, appropriate corrective orders can be issued.

Our conclusion is bolstered by the speculative and contingent nature of the harm in this case. Because of the limited scope of review provided by the Wilderness Act, only agency conduct that is irreconcilable with the statutory mandate to preserve the wilderness characteristics of the Colorado wilderness areas will invoke judicial review. Yet Sierra Club has not even contended that the wilderness water values are themselves imminently and directly threatened in this case. Instead, Sierra Club contends only that the federal reserved water rights that protect these wilderness water values are threatened by the operation of the Colorado postponement doctrine,[7] which may subordinate the priority of wilderness water rights if the Forest Service fails to assert the rights in the state water courts. *See, e.g., Bell,* 724 P.2d at 641–42 (explaining operation of postponement doctrine); Colo.Rev.Stat. § 37–92–306.

■ Sierra Club has not, however, shown that even if the alleged federal reserved water rights created under the Wilderness Act are threatened, that then the wilderness water values themselves are threatened. Nor does that conclusion inevitably follow. *First,* federal reserved water rights, as creatures of federal law, are protected from extinguishment under state law by the Supremacy Clause, U.S. Const. art. VI. *See United States v. City & County of Denver,* 656 P.2d 1, 34–35 (Colo. 1983) (en banc); *Navajo Development Co. v. Sanderson,* 655 P.2d 1374, 1379 (Colo. 1982) (en banc). *Second,* even if federal

reserved water rights are subject to postponement under Colorado law as held by *Bell,* there is no guarantee that the point of any diversion will be above or within the wilderness areas, where the direct impact of such change in water rights status would be the greatest. Absent a diversion within or above the wilderness area, it is difficult to see what harm might befall the wilderness water values that a wilderness water right could prevent. *Third,* the Forest Service contends that there are either adequate administrative controls in place that will prevent diversions above or within wilderness area or that geographical features render such diversions or projects impractical in areas within or above the wilderness areas. *See* second report, at 10–19. *Fourth,* there is no guarantee that any diversion which might occur in or above a wilderness area would even have a noticeable impact on wilderness water values. The mere statement of the contingencies that must occur before Sierra Club's asserted harms to wilderness water values will occur even if there are water appropriations underscores the speculative and hypothetical nature of this issue. Based on these considerations, we conclude that there is simply no showing of a harm with the necessary degree of magnitude or imminence that would justify a finding that the Forest Service's conduct is irreconcilable with its duty to preserve the wilderness characteristics of the wilderness areas. Accordingly, we find that judicial intervention is inappropriate at this time.

■ We hold that this case is not ripe for adjudication. Both factors of the *Abbott Laboratories* test as well as the speculative and contingent nature of the harm support our conclusion that judicial intervention is inappropriate in this case. The contingency of any harm on the Forest

---

7. Briefly stated, the Colorado postponement doctrine provides that holders of senior conditional water rights (which are similar to federal reserved water rights, *see Navajo Development Co. v. Sanderson,* 655 P.2d 1374, 1380 (Colo. 1982) (en banc)), may lose their priority to junior conditional appropriators who adjudicate their rights first if the senior conditional appropriators do not intervene in the same calendar year. *See Bell,* 724 P.2d at 641–42; Colo.Rev. Stat. § 37–92–306. For example, if a senior conditional appropriator with a priority date of ·1907 did not appear in an adjudication started by a junior conditional appropriator with a priority date of 1976, the junior appropriator's conditional right would become absolute on adjudication and have priority over the senior appropriator's conditional right.

Service's choice of alternatives makes this case indistinguishable from other cases where the Court had found ripeness lacking. In *Toilet Goods I*, as in this case, the Court found that where the harm and justification for action are both contingent on future administrative action, adjudication should be postponed. *See Toilet Goods I*, 387 U.S. at 163–64, 87 S.Ct. at 1524–25. Nor was judicial resolution appropriate in *Wheeler*, where the Court found, as is the case here, that the statutory or constitutional implications of the agency's action depended on the contours of the agency's actual choice of action and hence could not be decided in the abstract. *See Wheeler*, 417 U.S. at 426, 94 S.Ct. at 2287–88. *See also Babbitt*, 442 U.S. at 303–05, 99.S.Ct. at 2311–12 (issue unripe where First Amendment claim "depends inextricably upon the attributes of the situs involved" and no access has yet been denied to any particular situs); *Blanchette v. Connecticut Gen. Ins. Corps. (Regional Rail Reorganization Cases)*, 419 U.S. 102, 145–49, 95 S.Ct. 335, 359–61, 42 L.Ed.2d 320 (1974) (valuation controversy unripe because "it cannot be determined now what impact any particular theory of valuation may have when applied ... nor can we know where the interests of the parties lie."). Sierra Club is seeking to invoke judicial relief based largely on speculation and hypotheticals. This we will not do. The federal courts do not render advisory opinions. *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239–41, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937).[8]

Finally, we note that our determination is supported by the Supreme Court's recent decision in *Lujan*, 496 U.S. ——, 110 S.Ct. 3177. In *Lujan*, the National Wildlife Federation sought to challenge the Department of the Interior's "land withdrawal review program," which consisted of hundreds of administrative decisions reclassifying federal lands. The Court emphasized:

a regulation is not ordinarily considered the type of agency action "ripe" for judicial review under the APA until the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out, by some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him.

*Id.* at ——, 110 S.Ct. at 3190. The Court then reviewed the nature of the challenged "program" and determined that because the program included hundreds of individual administrative decisions that it was neither final agency action nor ripe for judicial review. The Court concluded:

But it is at least entirely certain that the flaws in the entire "program"—consisting principally of the many individual actions referenced in the complaint, and presumably actions yet to be taken as well—cannot be laid before the courts for wholesale correction under the APA, simply because one of them that is ripe for review adversely affects one of respondent's members.

The case-by-case approach that this requires is understandably frustrating to an organization such as respondent, which has as its objecive across-the-board protection of our Nation's wildlife and the streams and forests that support it. But this is the traditional, and remains the normal, mode of operation of the courts. Except where Congress explicitly provides for our correction of the administrative process at a higher level of generality, we intervene in the administration of the laws only when, and to the

8. Prudential considerations also come into play. Declaratory judgments are an equitable remedy and are not granted of right, but only at the sound discretion of the court. *See Public Affairs Assocs. v. Rickover*, 369 U.S. 111, 112, 82 S.Ct. 580, 581–82, 7 L.Ed.2d 604 (1962); *accord Hewitt v. Helms*, 482 U.S. 755, 762, 107 S.Ct. 2672, 2676–77, 96 L.Ed.2d 654 (1987) ("The fact that a court *can* enter a declaratory judgment does not mean that it *should.*" (emphasis in original)). The Supreme Court has cautioned that important issues of public law should not be decided by declaratory judgment in the absence of need. *Kleppe v. New Mexico*, 426 U.S. 529, 546–47, 96 S.Ct. 2285, 2295, 49 L.Ed.2d 34 (1976); *Rickover*, 369 U.S. at 112, 82 S.Ct. at 581–82. Because the existence of federal reserved water rights based on the Wilderness Act is an important public issue of great moment in Colorado, and because of the uncertain and tenuous nature of the record, we conclude that forbearance is justified in this case.

extent that, a specific "final agency action" has an actual or immediately threatened effect.

*Id.* at ——, 110 S.Ct. at 3190–91 (citations and footnote omitted). We find this case to be similar to *Lujan.* Both cases involve challenges to the cumulative effect of numerous agency actions that allegedly render the actions illegal. Both cases involve conjectural or speculative harms to the challenger. In light of the Supreme Court's decision in *Lujan,* we cannot say that Sierra Club's challenge to the Forest Service's administration of the wilderness areas is ripe for review.

Therefore, because we find that the issues are not fit for judicial resolution, that the hardships to the parties of delaying judicial considerations are outweighed by the advantages of waiting for development of a full record, and that the harm sought to be alleviated is remote and speculative so that we would be rendering an advisory opinion, we hold that this case is not ripe for adjudication. The district court erred in taking jurisdiction and declaring that the Wilderness Act creates federal reserved water rights.

## C. *What Is the Proper Relief?*

■ The government contends that since the judgment of the district court is an "advisory opinion," we should vacate not only the appeal and judgment in this case but also the district court's orders to the Forest Service to prepare the first and second reports. We disagree.

■ A federal court has jurisdiction to determine its jurisdiction. *Familia de Boom v. Arosa Mercantil, S.A.,* 629 F.2d 1134, 1137 (5th Cir.1980), *cert. denied,* 451 U.S. 1008, 101 S.Ct. 2345, 68 L.Ed.2d 861 (1981). It is well established that the district court may hold an evidentiary hearing or make other orders necessary to evaluate its jurisdiction. *See Sherman v. American Fed'n of Musicians,* 588 F.2d 1313, 1314 (10th Cir.1978), *cert. denied,* 444 U.S. 825, 100 S.Ct. 46, 62 L.Ed.2d 31 (1979). Jurisdiction in this case includes determining reviewability. *See* 5 U.S.C. §§ 701(a)(2) & 702. It is also well established that a district court may require an agency to supplement the administrative record, *see Overton Park,* 401 U.S. at 420, 91 S.Ct. at 825–26, and prepare a statement of reasons for its position or explain its position, *see Northern Ind. Pub. Serv. Co. v. FERC,* 782 F.2d 730, 746 (7th Cir.1986); *Environmental Defense Fund v. Ruckelshaus,* 439 F.2d 584, 596 (D.C.Cir.1971)). In our view, the district court's orders directing the preparation of the reports are based at least in part on the need to determine jurisdiction. *See Sierra Club v. Block,* 622 F.Supp. at 865. The district court needed the information presented in the reports to determine whether the Forest Service had consciously abdicated its statutory responsibilities, *see Chaney,* 470 U.S. at 833 n. 4, 105 S.Ct. at 1656 n. 4; *Adams v. Richardson,* 480 F.2d at 1163–64, and to determine the nature of the harm asserted. We also needed the information contained in the reports to evaluate our jurisdiction in this case. Therefore, to the extent the reports were used to determine jurisdiction, we hold that the district court did not abuse its discretion in ordering their preparation. Because we hold that this case is not ripe for adjudication, the Forest Service is not bound by the policy statements contained in the reports, although the reports remain part of the record of this case.

### III.

This case is not ripe for adjudication because the harm which is the basis of Sierra Club's claim to reviewability is speculative and contingent, the issues are not fit for judicial resolution, and prudential concerns counsel forbearance. The district court therefore erred in granting declaratory judgment that the Wilderness Act created federal reserved water rights. Accordingly, we DISMISS the appeal, VACATE the judgment of the district court and REMAND with directions to dismiss the complaint as not ripe for adjudication.

THEIS, Senior District Judge, concurring.

Although I fully concur in the opinion and lucid analysis of the authored opinion,

I write separately only to emphasize aspects of our decision that I deem particularly significant.

We have determined that the Wilderness Act does provide limited guidelines by which courts may review the action or inaction of the Forest Service. As our opinion notes, judicial review extends to conduct of the agency that represents an abdication of its "statutory mandate to preserve the wilderness characteristics of the wilderness areas." *Supra,* at note 5. It is obvious to me that if and when any future threat to the wilderness areas results from the Forest Service's refusal to assert implied water rights, the very assumption of review under this standard should be a fair indication of the decision to follow. Congress withdrew and reserved such areas for the express purpose of providing "for the protection of these areas [and] the preservation of their wilderness character," 16 U.S.C. § 1131(a), and commanded that they "be devoted to the public purposes of recreation, scenic, scientific, educational, conservation, and historical use." *Id.* at § 1133(b). Unless one can take seriously defendant-intervenors' suggestion that Congress created the wilderness areas with such specific language, but did not intend to reserve enough water to fulfill their central purpose, I believe that the conclusion of the district court may well be vindicated in the appropriate case.

The opinion also observes that Colorado's postponement doctrine will not defeat any implied rights to wilderness waters reserved by the federal government under the Wilderness Act. *Supra* at note 7 and accompanying text. Thus, the intentional refusal or "benign neglect," *Sierra Club v. Block,* 622 F.Supp. 842, 865 (D.Colo.1985), of the federal government timely to adjudicate the issue of prior reserved rights to wilderness waters should not operate to extinguish any superior federal rights. If Forest Service inaction becomes incompatible with its statutory mandate to protect and preserve the wilderness character of these areas, "the Sierra Club may either intervene in the state water proceeding ... or may seek judicial review ... in federal court." *Supra,* at page 1418. I read this

statement as a repudiation of defendants' argument that under the McCarran Amendment, 43 U.S.C § 666, entertainment of this issue in federal court would never be appropriate in the face of ongoing stream adjudications in state court.