**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 19 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

JOHN ROE #2; THE RALPH
TIMOTHY POTTER CHAPTER OF
THE AMERICAN CIVIL LIBERTIES
UNION AT THE UNIVERSITY OF
DENVER COLLEGE OF LAW,

    Plaintiffs - Appellants,

vs.

ALAN OGDEN, in his official
capacity as the Executive Director of
the Colorado State Board of Law
Examiners; and MELANIE BACKES,
DEBORAH BIANCO, SHERRY A.
CALOIA, DAVID DIFFEE, JAY E.
FERNANDEZ, SHARI FRAUSTO,
SUSAN M. HARGLEROAD,
STEVEN J. HENSEN, GARY
JACKSON, DORIS G. KAPLAN, and
HELEN STONE, in their official
capacities as members of the Bar
Committee of the Colorado State
Board of Law Examiners,

    Defendants - Appellees.

No. 00-1302

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 99-M-967)

---

Stephen G. Masciocchi (David D. Powell, Jr. and Susannah Pollvogt, Holland &

Hart, L.L.P. and Mark Silverstein, American Civil Liberties Union Foundation of Colorado, with him on the briefs), Denver, Colorado, for Appellants.

Dianne E. Eret, Assistant Attorney General (and Ken Salazar, Attorney General, with her on the brief), Denver, Colorado, for Defendants - Appellees.

------

Before **KELLY**, **MCWILLIAMS**, and **REAVLEY**[*], Circuit Judges.

------

**KELLY**, Circuit Judge.

------

John Roe #2 and the Ralph Timothy Potter Chapter of the American Civil Liberties Union at the University of Denver College of Law (collectively, the "Students") appeal from the district court's dismissal of their complaint. The district court concluded that the Students lacked standing, that their claims were not ripe, and that abstention was appropriate. We have jurisdiction under 28 U.S.C. § 1291 and reverse. The Students' action should proceed to the merits, on which we express no opinion.

I. Background

The Students, including John Roe #2, are members of the Potter Chapter of the ACLU and students or recent graduates of the University of Denver College of

------

[*]Honorable Thomas M. Reavley, Sr., Senior Circuit Judge, United States Court of Appeals Fifth Circuit, sitting by designation.

Law.  Aplt. App. at 211, ¶ 1 (Second Amended Complaint); Aplt. Notice of

Factual Developments Pending Appeal at 2, ¶ 3; University of Denver College of

Law Web Page, May 2001 Graduate List, at

http://www.law.du.edu/registrar/graduation/Spring_2001_Graduation/Grad_List/

(last visited June 1, 2001).[2]  The bar application asks over forty questions.  Aplt.

App. at 216, ¶ 16.  Three questions pertain to the applicant's past treatment for

mental and emotional health disorders, treatment for drug, narcotic, or alcohol

abuse, and addictions to drugs, narcotics, or alcohol.  Id. at 217-18, ¶ 19.  If an

applicant answers "yes" to any of the three questions, the applicant is required to

provide documentation and further explain the condition for which the applicant

was treated.  Id. at 57 (application instructions).  A letter will be sent to persons

identified by the applicant as having information regarding the applicant's

treatment.  Id. at 218, ¶ 21 (Second Amended Complaint).  The applicant is also

required to sign an "Authorization and Release" form.  Id. at ¶ 20.  The form

authorizes the Board to inspect and copy information related to the applicant's

treatment.  Id.  The Board may also "hold a hearing and require the applicant to

attend and respond to further questions about his or her history of drug and

---

[2]  We take all factual allegations in the Students' complaint as true and construe them in the light most favorable to the Students.  Citizens for Responsible Gov't State Political Action Comm. v. Davidson, 236 F.3d 1174, 1189 (10th Cir. 2000); Holt v. United States, 46 F.3d 1000, 1002 (10th Cir. 1995).

alcohol dependency, history of treatment for drug or alcohol problems, or hospitalization for a mental health issue." Id. ¶ 23; see also Colo. R. Governing Admission to the Bar 201.9-10. John Roe #2 graduated in May, University of Denver College of Law Web Page, May 2001 Graduate List, at http://www.law.du.edu/registrar/graduation/Spring_2001_Graduation/Grad_List/ (last visited June 1, 2001), and will take the bar examination in July. Aplt. Notice of Factual Developments Pending Appeal at 2, ¶ 3. In his bar application, John Roe #2 indicated that he had received treatment for alcohol, drug or narcotic use within the past 10 years. Id. Other Students have applied or will apply for the bar. Aplt. App. at 214, ¶ 10a (Second Amended Complaint). They, too, have histories of treatment for a mental or emotional health disorder or alcohol or drug use. Id.

The Students alleged that "these inquiries and investigations violate the ADA's prohibition of discrimination against individuals who are disabled, have a history of disability, or are perceived to be disabled." Id. at 212, ¶ 3; see also id. at 221-22, ¶ 35-36, They also asserted under 42 U.S.C. § 1983 that the "inquiries and investigations violate their constitutional right to privacy." Id. at 212, ¶ 3, 224, ¶ 43-44. The Students sought a declaratory judgment and a preliminary and permanent injunction against Alan Ogden, Executive Director of the Colorado State Board of Law Examiners (the "Board") and members of the Bar Committee

of the Board in their official capacities.  Id. at 215, ¶¶ 12-13, 225, ¶ 48.

The district court dismissed the action without prejudice on three grounds: standing, ripeness, and abstention.  Aplt. App. at 247.  On appeal, the Students argue that the dismissal was in error.  We address each of the bases upon which the district court dismissed the Students' action in turn.  We also address the Board's argument that the Students' action is barred by the Eleventh Amendment.

## II.  Discussion

### A.    Standing

The district court concluded that John Roe #2 lacked standing because, having not yet graduated from law school or passed the bar exam, he did not face imminent injury.  Id. at 253.  For this same reason, the district court concluded that the Potter Chapter lacked associational standing.  Id. at 254.  According to the district court, the Students' injuries were not redressible: "If this court were to enjoin the defendants from continuing to ask the three challenged questions, the Bar Committee may and presumably would find other means to make the inquiries necessary to determine the fitness of applicants."  Id. at 251.  The district court erred in holding that the Students lacked standing.

#### 1.    John Roe #2's Standing

We review the question of standing de novo.  Sac & Fox Nation of Mo. v.

Pierce, 213 F.3d 566, 571 (10th Cir. 2000), cert denied, 121 S. Ct. 1078 (2001).

The constitutional requirements for standing are (1) an injury in fact, (2) a causal connection between the injury and the challenged act, and (3) a likelihood that the injury will be redressed by a favorable decision. Vermont Agency of Natural Res. v. United States ex. rel. Stevens, 529 U.S. 765, 771 (2000). The alleged injury must be concrete and particularized and imminent or actual, as opposed to conjectural or hypothetical. Id. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (citations and internal quotations omitted) (alteration in original).

i.      Injury-in-fact

John Roe #2 faces imminent injury.[3] He has graduated and will sit for the bar exam in July. Since he has disclosed his past treatment for alcohol, drug, or narcotic use in his application, John Roe #2 will be subject to Board investigation, which he believes violates the ADA and Constitution. The fact that John Roe #2 could fail the bar exam does not defeat standing because John Roe

---

[3] In light of this conclusion, we do not reach the Students' contention that they have also suffered actual injury.

#2 has alleged more than "some day intentions." Id. at 564 (internal quotations).

A plaintiff is required only to allege concrete plans; id., he is not required to

successfully execute those plans. See Buchwald v. Univ. of New Mexico Sch. of

Med., 159 F.3d 487, 493 (10th Cir. 1998) (plaintiff required to make "an adequate

showing that she will re-apply to [medical school]" to have standing (citation and

internal quotations omitted)).

Bryant v. Yellen, 447 U.S. 352, 366-68 (1980), cited with approval by

Clinton v. City of New York, 524 U.S. 417, 432 (1998), supports this conclusion.

In Bryant, the district court held that privately owned farmland in Imperial Valley

in California was not subject to a provision in the Boulder Canyon Project Act, 43

U.S.C. § 617, which "limited water deliveries from reclamation projects to 160

acres under single ownership." Id. at 355. Certain Imperial Valley residents

sought to intervene and appeal the decision. Id. at 366. They asserted standing

on the basis that they desired to purchase farmland in Imperial Valley that might

become available if the acre limitation was held to be applicable. Id. However,

the residents "could not with certainty establish that they would be able to

purchase excess lands if [the provision] were held applicable." Id. at 367. It was

uncertain whether owners of excess land would sell, whether the residents had

sufficient financial resources to purchase the land, and whether the residents

would be outbid by other potential purchasers. Id. at 367 & n.17. These

uncertainties notwithstanding, the residents had standing because it was <u>likely</u> that the residents would purchase the excess lands if the acre limitation was applicable.  <u>Id.</u> at 368.  The facts in this case are far more compelling.  Having invested three years of time and resources to complete law school, John Roe #2 will sit for the bar exam.  Furthermore, it is likely that John Roe #2 will pass the bar exam.  Over 80% of University of Denver College of Law students who have taken the Colorado bar exam for the first time in recent years have passed.  Colorado Supreme Court Board of Law Examiners' Web Page, <u>Pass/Fail Rates by Law School: February 2001 Bar Examination</u>, <u>at</u> http://www.courts.state.co.us/ble/results/LawSchoolStats0102.htm (last visited June 1, 2001);  Colorado Supreme Court Board of Law Examiners' Web Page, <u>Pass/Fail Rates by Law School: July 2000 Bar Examination</u>, <u>at</u> http://www.courts.state.co.us/ble/results/LawSchoolStats0007.htm (last visited June 1, 2001).

      ii.    <u>Redressibility</u>

John Roe #2's injury is redressible.  An injury is redressible if "the prospect of obtaining relief from the injury as a result of a favorable ruling is not too speculative."  <u>Northeastern Florida Chapter of the Associated Gen. Contractors of America v. City of Jacksonville</u>, 508 U.S. 656, 663-64 (1993) (citation and internal quotations omitted).  Litigation has proven to be an

effective vehicle to abolish or circumscribe questions like those in dispute here. See, e.g. Clark v. Virginia Bd. of Bar Exam'rs, 880 F. Supp. 430, 440 (E.D. Va. 1995) ("At least eight states . . . have recently altered their mental health questions in light of potential or actual litigation under the ADA."). The district court's conclusion that the Board could obtain the same instruction by "other means," Aplt. App. at 251, does not persuade us otherwise. The district court failed to identify "other means" by which the Board could obtain similar information, and we presume that the Board would obey a lawful order should relief be granted. We therefore hold that John Roe #2's injury is redressible.

This case is distinguishable from our decision in Wilson v. Glenwood Intermountain Properties, Inc., 98 F.3d 590 (10th Cir. 1996). In Wilson, the plaintiffs lacked standing to challenge the operation of gender-segregated and single-gender apartments reserved solely for Brigham Young University students because "[a]s non-students, . . . they would not have qualified to rent the student apartments." Id. at 594. By way of contrast, John Roe #2 is eligible to apply for admission to the bar. If he obtains a favorable judgment and passes the bar exam, his application will be considered without the accompanying investigation into his past history of alcohol dependency. Accordingly, unlike the plaintiffs' injury in Wilson, John Roe #2's injury is redressible.

2.    Potter Chapter's Standing

The Potter Chapter must satisfy three requirements to have associational standing:

> (a) [I]ts members [must] otherwise have standing to sue in their own right; (b) the interests it seeks to protect [must be] germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested [must] require[] the participation of individual members in the lawsuit.

United Food and Commercial Workers Union Local 751 v. Brown Group, Inc., 517 U.S. 544, 553 (1996) (quoting Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977)). As explained, John Roe #2 has standing. Because John Roe #2 is a member of the Potter Chapter, the fact that he has standing is sufficient to satisfy the first requirement. Warth v. Seldin, 422 U.S. 490, 511 (1975) ("The association must allege that its members, or any one of them are suffering immediate or threatened injury . . . ." (emphasis added)). It is not disputed that the Potter Chapter satisfies the remaining two requirements. Accordingly, the Potter Chapter has associational standing.

A.    Ripeness

The district court concluded that the Students' action was not ripe because it involved uncertain or contingent future events. Aplt. App. at 254-55 (Second Amended Complaint). The district court erred in so concluding.

We review the issue of ripeness de novo. Keyes v. Sch. Dist. No. 1,

Denver, Colo., 119 F.3d 1437, 1444 (10th Cir. 1997).  Because the Students' face imminent injury, they also satisfy the constitutional requirements of ripeness. Am. Civil Liberties Union v. Johnson, 194 F.3d 1149, 1155 (10th Cir. 1999); accord Nat'l Treasury Employees Union v. United States, 101 F.3d 1423, 1427 (D.C. Cir. 1996).  Therefore, the Students' action is ripe unless the prudential aspects of ripeness counsel against consideration.  Nat'l Treasury Employees Union, 101 F.3d at 1427-28.

The ripeness doctrine cautions a court against premature adjudication of disputes involving administrative policies or decisions not yet formalized and felt in a concrete way by the challenging parties.  Qwest Communications Int'l, Inc. v. F.C.C., 240 F.3d 886, 893 (10th Cir. 2001); see also Abbott Laboratories v. Gardner, 387 U.S. 136, 148-49 (1967), overruled on other grounds, Califano v Sanders, 430 U.S. 99 (1977).  The ripeness inquiry is threefold: "(1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented."  Qwest, 240 F.3d at 893-94 (quoting Ohio Forestry Ass'n v. Sierra Club, 523 U.S. 726, 732-33 (1998)).  In the context of the facts of this case, none of these considerations counsel against consideration of the Students' action.

Delayed review will cause the Students hardship. The questions on the bar application and related investigations will have a "direct and immediate impact" upon the Students. Id. at 894 (quoting Abbott Laboratories, 387 U.S. at 152). John Roe #2 and other Students who may have answered the disputed questions in their bar applications will soon be subject to an investigation they believe will violate their rights under the ADA and Constitution. Those Students who have elected or will elect not to answer the questions risk denial of admission to the bar after expending considerable time and expense. This risk is more than hypothetical. The ACLU has already asked the Board to remove the disputed questions. See Aplt. App. at 228-32 (correspondence between ACLU and Board). The Board modified two of the questions, id. at 234-35, but declined to further alter the questions to the ACLU's liking. Id. at 244. Therefore, were we to delay review until the Students pass the bar exam and challenge the questions before the Board and Colorado Supreme Court, we would in effect require the Students "to jump through a series of hoops, the last of which [they are] certain to find obstructed by a brick wall." Triple G Landfills, Inc. v. Bd. of Comm'rs of Fountain County, Indiana, 977 F.2d 287, 291 (7th Cir. 1992). All the while, the Students' legal careers will be placed on hold.

The Board asserts that it will not review the Students' answers to the disputed questions and commence related investigations until the Students

graduate and pass the bar exam.  See Aplt. App. 87C-D, ¶10 (affidavit of Mr.

Ogden).  Accordingly, the Board argues that the Students' action is not yet ripe

since none of the Students have graduated or passed the bar exam.  The Board

relies primarily upon the Supreme Court's decision in Reno v. Catholic Soc.

Services, Inc., 509 U.S. 43 (1993).  Reno, however, is factually distinguishable

from this case.

In Reno, the Supreme Court held that a challenge to INS temporary resident

status regulations by aliens who had not been "front-desked"[4] was not yet ripe.

Id. at 59-65.  The court reached this conclusion because it was unclear whether

any of the aliens were willing to apply for temporary resident status and whether

the aliens would satisfy other conditions necessary to obtain such status.  Id. at 59

n.20.  The aliens' "claim[s] would ripen only once [they] took the affirmative

steps that [they] could take before the INS blocked [their] path by applying the

regulation to [them]."  Id. at 59.  We are not faced with such uncertainties in this

case.  The Students are on a collision course with the disputed questions and a

Board investigation.  They have or will have invested three years of their life and

untold resources into their legal education.  John Roe #2 graduated in May, and

he and other Students have applied for admission to the bar and will take the

---

   [4]  The term refers to those aliens whose applications were rejected by
Legalization Assistants because the applicant was deemed to be statutorily
ineligible.  Id. at 61-62.

exam in July. As with standing, the fact that the Students have not yet passed the bar exam does not defeat ripeness. While "[t]here is always the chance" that the Students will not graduate or fail the exam, "that contingency, in and of itself, is not sufficient to defeat ripeness." Triple G Landfills, 977 F.2d at 291. This is particularly true "in light of the substantial practical effect" the questions and investigation have on the Students' long-term plans. Id. at 291.

The final two factors warrant only brief discussion. There are no pending Board administrative actions concerning the legality of the questions and related Board investigation. Furthermore, we will not benefit from further factual development because the Students' action is a facial challenge. A "determination of the merits turns upon strictly legal issues" and does not "require[] facts that may not yet be sufficiently developed." New Mexicans for Bill Richardson v. Gonzales, 64 F.3d 1495, 1499 (10th Cir. 1995).

C.    Abstention

Although no state action was pending, the district court concluded that it should abstain from adjudicating the Students' action because state action was imminent and the Colorado Supreme Court should have the opportunity to address the Students' challenge to the disputed questions: "[T]he Colorado Supreme Court must grant or deny each application for Bar admission and there is no impediment to an applicant's urging that court to grant admission despite a failure

to answer the contested questions or to supply the information sought to be protected." Aplt. App. at 255. This decision to abstain, under <u>Younger v. Harris</u>, 401 U.S. 37 (1971), and its progeny, was in error.

We review the district court's decision to abstain de novo. <u>Taylor v. Jaquez</u>, 126 F.3d 1294, 1296 (10th Cir. 1997). Abstention "is the exception, not the rule." <u>Ankenbrandt v. Richards</u>, 504 U.S. 689, 705 (1992) (citation and internal quotations omitted). It should be "rarely . . . invoked, because the federal courts have a virtually unflagging obligation . . . to exercise the jurisdiction given them." <u>Id.</u> (citation and internal quotations omitted). <u>Younger</u> abstention is appropriate only if (1) a party asserts federal claims that have been or could be presented in ongoing state proceedings, (2) the state proceedings implicate important state interests, and (3) the state proceedings afford an adequate opportunity to raise federal claims. <u>J.B. ex. rel. Hart v. Valdez</u>, 186 F.3d 1280, 1291 (10th Cir. 1999). In all other cases, <u>Younger</u> abstention is not appropriate. <u>Ankenbrandt</u>, 504 U.S. at 705; <u>see also</u> <u>J.B. ex. rel. Hart</u>, 186 F.3d at 1291 ("A case warrants <u>Younger</u> abstention only if each of these three criteria are satisfied."). In fact, in 1992, the Supreme Court noted that it had "never applied the notions of comity so critical to <u>Younger</u>'s "Our Federalism" when no state proceeding was pending . . . ." <u>Ankenbrandt</u>, 504 U.S. at 705. This remains true today. <u>Pennzoil Co. v. Texaco, Inc.</u>, 481 U.S. 1, 12 n.9 (1987), upon which the

- 15 -

Board heavily relies, is not to the contrary. Any suggestion in Pennzoil that a pending state proceeding was not a prerequisite to Younger abstention was put to rest in Ankenbrandt, 504 U.S. at 705.

D.    Sovereign Immunity

The district court construed the Students' action as brought "against the Colorado Supreme Court." Aplt. App. at 247. The court explained: "Th[e] tactic [of dismissing the Colorado Supreme Court and Colorado State Board of Law examiners] does not change the nature of this case. Claims made against persons in their official capacities are claims against the entities authorizing their actions." Id. Nevertheless, the district court passed on the question of whether the Eleventh Amendment barred the Students' action. The Board asserts on appeal that the Eleventh Amendment does in fact bar this action. We address the issue of sovereign immunity, as we may affirm the district court for any reason that is adequately supported by the record, Weitzel v. Div. of Occupational and Prof'l Licensing of Dep't of Commerce of Utah, 240 F.3d 871, 876 (10th Cir. 2001), and the issue concerns our jurisdiction. J.B. ex. rel. Hart, 186 F.3d at 1285.

An individual may bring an ADA or § 1983 action against a state official in

federal court for injunctive relief under Ex parte Young, 209 U.S. 123 (1908).[5]

J.B. ex. rel. Hart, 186 F.3d at 1287; Edelman v. Jordan, 415 U.S. 651, 677 (1974)

(§ 1983); Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 n.10 (1989)

("Of course a state official in his or her official capacity, when sued for

injunctive relief, would be a person under § 1983 because 'official-capacity

actions for prospective relief are not treated as actions against the State.'"

(quoting Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985)).  "Under the Ex

parte Young doctrine, the Eleventh Amendment generally does not bar a suit

against a state official in federal court which seeks only prospective equitable

relief for violations of federal law, even if the state is immune."  J.B. ex. rel.

Hart, 186 F.3d at 1286 (citation and internal quotations omitted).  The Students'

action therefore falls squarely within the Ex parte Young exception to Colorado's

Eleventh Amendment immunity.

The Board raises two arguments against application of Ex parte Young,

neither of which is availing.  First, the Board argues that the Ex parte Young

exception is unavailable in this case because the Students seek an injunction

against the Colorado Supreme Court.  Ex parte Young prohibits a federal court

only from enjoining "a court from acting in any case brought before it . . . ."  209

---

[5]  Because the Supreme Court has issued its decision in Board of Trustees of the University of Alabama v. Garrett, 121 S.Ct. 955, 968 n.9 (2001), the Board's request that this case be held in abeyance pending Garrett is moot.

U.S. at 163. The Students do not seek to enjoin the Colorado Supreme Court from acting in a pending case. Moreover, the Students may bring a general challenge to bar admission rules promulgated by the Colorado Supreme Court. See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482-83 (1983); Johnson v. Rodrigues (Orozco), 226 F.3d 1103, 1108 (10th Cir. 2000). Second, the Board argues that the Students' action is barred under the narrow exception to Ex parte Young set forth in Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261 (1997). This exception is inapplicable here because the Students seek only injunctive relief. J.B. ex. rel. Hart, 186 F.3d at 1286 (holding that Coeur d'Alene exception to Ex parte Young applies only if the plaintiffs' action "implicates special sovereignty interests" and the relief sought "is the functional equivalent to a form of legal relief against the state that would otherwise be barred by the Eleventh Amendment" (citation and internal quotations omitted)).

## III. Conclusion

For the foregoing reasons, the district court's order is reversed. The Students' action should proceed to the merits.