**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 7 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

COALITION FOR SUSTAINABLE
RESOURCES, INC., a Colorado non-
profit corporation,

     Plaintiff-Appellant,

v.

UNITED STATES FOREST
SERVICE, Department of Agriculture;
ANN M. VENEMAN, Secretary of the
U.S. Department of Agriculture;
UNDERSECRETARY OF
AGRICULTURE FOR NATURAL
RESOURCES, United States
Department of Agriculture; DALE
BOSWORTH, United States Forest
Service Chief Forester; RICK
CABLES, United States Forest Service
Regional Forester, Rocky Mountain
Region; MARY H. PETERSON,
Supervisor, Medicine Bow National
Forest, United States Forest Service,
all in their official capacities,[1]

No. 99-8060

---

[1]Pursuant to Fed. R. App. P. 43(c)(2), new officeholders are substituted as appellees in this action.

Defendants-Appellees,

BIODIVERSITY ASSOCIATES and
DONALD J. DUERR,

Defendants-Intervenors -
Appellees,

_____

NATIONAL WILDLIFE
FEDERATION,

Amicus Curiae.

_____

**Appeal from the United States District Court
for the District of Wyoming
(D.C. No. 98-CV-174-B)**

_____

S. Amanda Koehler (William Perry Pendley, with her on the briefs), of Mountain States Legal Foundation, Denver, Colorado, for Plaintiff-Appellant.

Sylvia F. Liu, Attorney, U.S. Department of Justice, Washington, D.C. (Lois J. Schiffer, Assistant Attorney General, Washington, D.C.; David D. Freudenthal, United States Attorney, Cheyenne, Wyoming; Carol A. Stakus, Assistant U.S. Attorney, Cheyenne, Wyoming; Andrew C. Mergen, Edward A. Boling, and Jane P. Davenport, Attorneys, U.S. Department of Justice, Washington, D.C.; Kenneth Capps, Of Counsel, U.S. Department of Agriculture, Denver, Colorado; and Kathryn Toffenetti, Of Counsel, Office of General Counsel, U.S. Department of Agriculture, Washington, D.C., with her on the brief), for Defendants-Appellees.[2]

Carolyn L. McIntosh (Michael R. Hope on the brief), of Patton Boggs, LLP, Denver, Colorado, for Defendants-Intervenors-Appellees.

_____

[2]We grant Defendants-Appellees' motion to substitute counsel Andrew C. Mergen for Sylvia F. Liu.

- 2 -

James B. Dougherty, Washington, D.C., filed a brief for Amicus Curiae.

_____

Before **TACHA**, Chief Judge, **SEYMOUR** and **EBEL**, Circuit Judges.

_____

**EBEL**, Circuit Judge.

_____

The Coalition for Sustainable Resources ("Coalition") challenges the United States Forest Service's failure to implement particular forest-management practices in the Medicine Bow National Forest in Wyoming, including increased timber harvesting. The Coalition alleges that these practices would increase the amount of water in the Platte River in Nebraska and thereby promote the recovery of several endangered and threatened species utilizing that habitat. The district court dismissed the case as not yet ripe for review, and also found that the Coalition had failed to state a claim upon which relief can be granted because the Endangered Species Act does not require federal agencies to adopt particular conservation measures.

We hold that this case is not yet ripe, and we therefore lack subject-matter jurisdiction. Here, the Coalition is challenging the Forest Service's inaction, but this inaction is not sufficiently final for review. The Forest Service is currently a cooperating agency in developing a conservation strategy for the Platte River species and is also revising its forest plan for the Medicine Bow. Because the agency has adopted a reasonable timeframe to study this problem, given the

complexity and urgency of the issues, we conclude that judicial review is not warranted at this time. We therefore AFFIRM the district court's dismissal for lack of jurisdiction and VACATE its disposition on the merits.

## BACKGROUND

The Endangered Species Act, 16 U.S.C. §§ 1531-1544, is a comprehensive scheme for the protection of listed endangered and threatened species and their habitat, regulating the activities of both governmental and private entities. The Act's ultimate goal is "conservation," bringing these species to the point where legal protections are no longer necessary. 16 U.S.C. §§ 1531(b), 1532(3). The Department of the Interior's Fish and Wildlife Service and the Department of Commerce's National Marine Fisheries Service share primary responsibility for administration of most parts of the Act. 16 U.S.C. § 1532(15); 50 C.F.R. § 17.2(b). At issue in this case, however, is a provision covering all other federal agencies, including the Department of Agriculture's Forest Service. These agencies "shall, in consultation with and with the assistance of the Secretar[ies of the Interior and of Commerce], utilize their authorities in furtherance of the purposes of [the Endangered Species Act] by carrying out programs for the conservation of endangered species and threatened species." 16 U.S.C. § 1536(a)(1).

The Platte River in Nebraska is home to the whooping crane, least tern, pallid sturgeon, and piping plover, all species listed as endangered or threatened under the Endangered Species Act, and part of the river has been designated "critical habitat" for the whooping crane. The Coalition alleges that more water (some 238,000 acre-feet per year) is needed in the Platte River to meet target flows established for the listed species. The Coalition alleges that the Fish and Wildlife Service has determined that a loss of as little as 0.7 acre-feet of water per year from the South Platte River drainage in Colorado is likely to jeopardize the continued existence of these species and adversely modify the designated critical habitat.[3]

The Department of the Interior and the states of Colorado, Nebraska, and Wyoming have signed a "Cooperative Agreement for Platte River Research and Other Efforts Relating to Endangered Species Habitats Along the Central Platte River, Nebraska." The purpose of this plan is to study the listed species dependant on the Platte River and implement a recovery plan. Although it is not a signatory, the Forest Service is participating as a "cooperating agency" in the development of an Environmental Impact Statement for the Cooperative

---

[3]The Final Biological Opinion referenced by the Coalition's allegation does refer to a proposed action that could reduce flow by 0.7 acre-feet annually, but that Opinion makes it clear that this particular action is only a "very small proportion of the depletions in the Platte River system" which cumulatively could have the adverse effects alleged by the Coalition.

Agreement. The record reflects that a program would be developed by the end of 2000.[4]

The Coalition is a non-profit organization devoted to encouraging the recovery of endangered species "using sound scientific, technological, and legal means in a manner that avoids unnecessary interference with private property rights." Among its members are ranchers, farmers, and other water-users in Wyoming and Colorado whose water-use practices are subject to restriction to prevent harm to the Platte River species. A declaration submitted for standing purposes indicates that the Coalition also has a member who is an amateur photographer with an aesthetic interest in these species.

Some 300 miles west is the Medicine Bow National Forest in Wyoming, part of which lies within the Platte River watershed. The Coalition alleges that implementing certain vegetation and snow management techniques in the Medicine Bow and other nearby National Forests could supply most or all of the water needed for the Platte River species to recover. Because denser forests yield less water, these techniques include increasing timber harvesting and allowing forest fires and insect outbreaks to proceed without human intervention. The

---

[4]The district court concluded that the study would be complete by July 2000. Intervenor Biodiversity Associates similarly informed us in its brief that the work "should be finished later this year [2000]." However, the parties have not given us a status report on those expected timetables.

1985 forest plan[5] for the Medicine Bow states that the forest could be managed so as to increase the forest's yield of water by 41,000-53,500 acre-feet per year; the Coalition alleges (and the Forest Service concedes) that a substantial portion of this increase would accrue to the Platte River, although it is not specifically alleged how much of this increased flow would benefit the listed species, given the water claims of the other water users in the river. The Coalition alleges, however, that the Medicine Bow is being managed in a manner that increases forest density and therefore decreases the quantity of water produced by the forests. In particular, in recent years the total timber sale volume in the Medicine Bow has fallen short of the level prescribed in the forest plan. The Forest Service is currently revising the Medicine Bow forest plan and expects to finish by the fall of 2002.[6] This revision will look at a broad range of alternatives for managing the forest, such as "increas[ing] the acreage where natural disturbance events (fire, insects and disease) are tolerated."

The Coalition sued Defendants, who are responsible for managing the Medicine Bow, under the citizen-suit provision of the Endangered Species Act, 16

_____

[5]Forest plans guide management strategies in the National Forests. They are developed with public participation, provide for an appropriate mix of multiple uses (commercial, recreational, and conservation-oriented), and are updated at least every fifteen years. See generally 16 U.S.C. § 1604.

[6]The district court concluded that the Medicine Bow forest plan would be completed by 2001. Again, the parties have not provided us with a status report on the expected timetables.

U.S.C. § 1540(g)(1), which states that "any person may commence a civil suit on his own behalf . . . to enjoin any person, including the United States and any other governmental instrumentality or agency . . . , who is alleged to be in violation of any provision of" the Act.[7] It alleged that Defendants violated their duty under § 1536(a)(1)[8] to carry out conservation programs in its management of the Medicine Bow. In particular, the Coalition alleged that the agency's inaction – its failure to implement the water-producing techniques, specifically more aggressive timber-harvesting practices – violated its conservation duty. The Coalition also implied that by allowing forest density to increase, the Forest Service was contributing to the decline of the Platte River species.[9] As less water is produced by the upstream forests, greater restrictions are imposed on downstream water-

---

[7]The complaint also asserted a violation of the Forest and Rangeland Renewable Resources Planning Act. The district court dismissed this claim on the grounds of sovereign immunity, and the Coalition has not appealed that ruling.

[8]In relevant part this section provides, "All other federal agencies shall, in consultation with and with the assistance of the Secretary, utilize their authorities in furtherance of the purposes of [the Endangered Species Act] by carrying out programs for the conservation of endangered species and threatened species listed" under the Act.

[9]The Coalition did not allege that Defendants' inaction was an agency "action . . . likely to jeopardize the continued existence" of the Platte River species or adversely modify their habitat in violation of § 1536(a)(2). We therefore have no occasion to consider whether an agency's inaction can constitute an "action" for these purposes under § 1536(a)(2).

users such as the Coalition's members.  The complaint sought declaratory and injunctive relief.

The Forest Service moved to dismiss the complaint, arguing that the Coalition lacked standing and failed to state a claim upon which relief could be granted.  Biodiversity Associates, an environmental group, and Donald J. Duerr, one of its members, intervened as defendants and moved to dismiss the complaint for lack of ripeness.  The district court found that the Coalition had standing, at least for the purposes of a motion to dismiss, but that the claims were not ripe and the Endangered Species Act does not require federal agencies to undertake particular conservation measures.  Coalition for Sustainable Resources v. United States Forest Serv., 48 F. Supp. 2d 1303 (D. Wyo. 1999).  The Coalition now appeals.

## DISCUSSION

To fall within our subject-matter jurisdiction, a case must raise issues that are ripe for review.  Park Lake Res. v. United States Dep't of Agric., 197 F.3d 448, 450 (10th Cir. 1999).  The plaintiff bears the burden of providing evidence to establish that the issues are ripe.  Id.  Where, as here, a party has attacked the factual basis for subject-matter jurisdiction, we do not presume the truthfulness of the complaint's factual allegations; rather, we may consider evidence not

contained in the pleadings. Pringle v. United States, 208 F.3d 1220, 1222 (10th Cir. 2000) (per curiam). We may not do so, however, if resolution of the jurisdictional question is intertwined with the merits of the case: If "resolution of the jurisdictional question requires resolution of an aspect of the substantive claim," id. at 1223, reference to evidence outside of the pleadings converts the motion to one under Rule 56. We review the district court's dismissal on ripeness grounds de novo and its findings of jurisdictional fact for clear error. Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995); accord Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1580 (Fed. Cir. 1993) ("[I]n the context of a ripeness determination, the district court's factual findings on jurisdictional issues must be accepted unless clearly erroneous." (quotation marks and brackets omitted)). Judicial review of agency action through the citizen-suit provision is governed by the Administrative Procedure Act (APA). See, e.g., Biodiversity Legal Found. v. Babbitt, 146 F.3d 1249, 1252 (10th Cir. 1998); Newton County Wildlife Ass'n v. Rogers, 141 F.3d 803, 807-08 (8th Cir. 1998); Cabinet Mountains Wilderness v. Peterson, 685 F.2d 678, 685 (D.C. Cir. 1982).

The basic rationale of the ripeness requirement is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been

formalized and its effects felt in a concrete way by the challenging parties."

Abbott Labs. v. Gardner, 387 U.S. 136, 148-49 (1967), overruled on other

grounds by Califano v. Sanders, 430 U.S. 99, 105 (1977).  Application of the

ripeness doctrine, however, "remains a confused mix of principle and pragmatic

judgment reflecting its mixture of article III case and controversy requirements

with prudential restraints on the exercise of jurisdiction."  Sierra Club v. Yeutter,

911 F.2d 1405, 1410 (10th Cir. 1990).[10]  Cases that challenge an agency's failure

to act, such as this one, are particularly difficult to analyze.  Id.

To determine whether a case is ripe, we examine both "the fitness of the

issues for judicial decision and the hardship to the parties of withholding court

consideration."  Abbott Labs., 387 U.S. at 149.

> In making this determination, we look to four factors: (1) whether the
> issues in the case are purely legal; (2) whether the agency action
> involved is "final agency action" within the meaning of the
> Administrative Procedure Act, 5 U.S.C. § 704; (3) whether the action
> has or will have a direct and immediate impact upon the plaintiff and
> (4) whether the resolution of the issues will promote effective
> enforcement and administration by the agency.

[10]The Coalition does not appear to argue that the citizen-suit provision of the Endangered Species Act abrogates the prudential (non-constitutional) component of the ripeness inquiry.  Cf. Roe v. Odgen, 253 F.3d 1225, 1231 (10th Cir. 2001) (noting that ripeness has constitutional and prudential components). The citizen-suit provision abrogates the prudential component of the standing inquiry by allowing suits by "any person."  Bennett v. Spear, 520 U.S. 154, 164 (1997) (quoting 16 U.S.C. § 1540(g)(1)).  There is no comparable language authorizing a suit at "any time," for example.  We therefore examine both constitutional and prudential limits to ripeness in this case.

HRI, Inc. v. EPA, 198 F.3d 1224, 1235-36 (10th Cir. 2000).[11]  None of these factors weigh strongly in favor of our exercising jurisdiction over the case at this point.  To the contrary, the challenged agency "action" – the Forest Service's inaction – is not yet "final."  In addition, not all the issues are purely legal, the immediate impact from the Forest Service's inaction is at best uncertain, and resolution of the merits at this time might impede rather than promote efficient administration of the Endangered Species Act.

### 1.  The Issues Are Not Purely Legal

Some aspects of this case involve pure questions of law.  For example, the parties dispute whether 16 U.S.C. § 1536(a)(1) imposes any substantive requirements on a federal agency, or whether the agency instead maintains unfettered discretion to decide how to fulfill its conservation duty.  If we were to rule that the Forest Service has unfettered discretion, the Coalition's case would likely fail on purely legal grounds.  If we were to rule that § 1536(a)(1) imposes substantive requirements, however, we would then have to determine if increased

---

[11]In Roe v. Ogden, we articulated a slightly different test for ripeness: "(1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented."  253 F.3d at 1231.  Notwithstanding the difference in articulation, the Roe standard essentially includes all the same considerations that appear in the HRI test.

timber harvesting in the Medicine Bow will promote conservation of the Platte River species. Will water produced 300 miles upstream reach the Platte River species and habitat, or will it be diverted by downstream users? Will the water be of an appropriate quality for these species? Will it accrue during the needed seasons? Will the proposed management techniques have collateral effects that must be considered, such as on other endangered species? It is evident that this case may raise numerous questions of fact or mixed questions of law and fact. "Where disputed facts exist and the issue is not purely legal, greater caution is required prior to concluding that an issue is ripe for review." Yeutter, 911 F.2d at 1417; cf. id. at 1418 (cautioning against "piecemeal review" when a case has some purely legal issues and some factual questions).

2. The Agency Action Is Not Final Within the Meaning of the APA

"Administrative finality is interpreted pragmatically." Yeutter, 911 F.2d at 1417. Keeping this admonition in mind, we find that in the absence of a definite statutory deadline for action, agency inaction can become "final" for these purposes in three situations. First, the agency might affirmatively reject a proposed course of action. See, e.g., NRDC v. Adm'r, EPA, 902 F.2d 962, 983 (D.C. Cir. 1990) (opinion of Wald, C.J.) (stating that if an agency "explicitly determines after review" not to change a rule, "that decision would, in most

- 13 -

situations, . . . be final"), vacated by voluntary dismissal, 921 F.2d 326 (D.C. Cir. 1991); cf. id. at 989 (opinion of Edwards, J.) (stating that inaction is final when the agency has completed a rulemaking and there is "some clear indication that the disputed issue was considered during the rulemaking procedure"). Second, the agency might unreasonably delay in responding to the proposal. See, e.g., Sierra Club v. Thomas, 828 F.2d 783, 793-94 (D.C. Cir. 1987); cf. Forest Guardians v. Babbitt, 174 F.3d 1178, 1190 (10th Cir. 1999) (stating that under the Endangered Species Act, "if an agency has no concrete deadline establishing a date by which it must act, and instead is governed only by general timing provisions . . . a court must compel only action that is delayed unreasonably."); NRDC, 902 F.2d at 983-84 (opinion of Wald, C.J.) (stating that circumstantial "contextual or historical evidence," such as silence throughout an entire rulemaking cycle, may indicate that an agency is "hiding a final decision not to [act] behind its silence"). Third, the agency might delay responding to the proposal beyond the time in which action could be effective. See, e.g., Thomas, 828 F.2d at 793 ("[A]gency inaction may represent effectively final agency action that the agency has not frankly acknowledged: when administrative inaction has precisely the same impact on the rights of the parties as denial of relief, an agency cannot preclude judicial review by casting its decision in the form of inaction rather than in the form of an order denying relief."). See generally Daniel P.

Selmi, <u>Jurisdiction To Review Agency Inaction Under Federal Environmental Law</u>, 72 Ind. L.J. 65, 90-102 (1996) (describing five judicial tests for determining whether agency inaction is final); Peter H.A. Lehner, Note, <u>Judicial Review of Administrative Inaction</u>, 83 Colum. L. Rev. 627, 652-55 (1983) (stating that inaction is final when the agency either refuses to take particular requested actions or fails to act entirely before a deadline).

This case presents none of the above situations. First, the Forest Service has not yet rejected the possibility of implementing Coalition's proposed management techniques. To the contrary, the district court found that the Forest Service is actively considering this course of action both in its revisions to the Medicine Bow forest plan and through its participation in the Cooperative Agreement. While the agency may not seek to evade judicial review by constantly beginning new rule-making cycles, <u>cf.</u> <u>Legalization Assistance Project v. INS</u>, 976 F.2d 1198, 1207-08 (9th Cir. 1992) ("If we allow the possibility that an agency may promulgate additional regulations in the future to dictate our decisions on ripeness, then an administrative agency's regulations could forever escape judicial review. The doctrine of ripeness is not intended to promote an absurd result."), <u>vacated</u>, 510 U.S. 1007 (1993); <u>Ohio Envtl. Council v. United States Dist. Court</u>, 565 F.2d 393, 398 (6th Cir. 1977) ("If a plan became unenforceable every time . . . a revision became a possibility, the entire

enforcement procedure of the Clean Air Act would be crippled."), we are satisfied that is not occurring here.

Second, the Forest Service has not unreasonably delayed a decision on whether to implement the proposed management techniques. It is sensible for the Forest Service to consider the issue in tandem with the Cooperative Agreement parties and as a part of its new forest plan. The Coalition asserts that we should not consider the Cooperative Agreement since the Forest Service is not a signatory. As noted above, however, the Forest Service is participating in that process as a "cooperating agency." This is particularly appropriate given that § 1536(a)(1), the provision at issue in the lawsuit, requires federal agencies to carry out conservation programs in consultation with the Department of the Interior, which is a signatory to the Cooperative Agreement. Both the Cooperative Agreement and the forest-plan revisions anticipate final action within a reasonable period of time given the enormous complexity of the issues involved and the obvious benefits of a coordinated approach.

Third, the district court found that the Platte River species are not facing immediate jeopardy. This finding is not clearly erroneous.[12] Although the

---

[12]As noted above, the district court properly considered evidence outside of the pleadings on this motion to dismiss for lack of subject-matter jurisdiction. Pringle, 208 F.3d at 1222. We therefore review the district court's factual findings deferentially, Holt, 45 F.3d at 1003, and in view of the full record, not

(continued...)

Coalition alleges that a loss of as little as ninety-eight gallons of water from Medicine Bow would contribute incrementally to the species' loss of water, this is insufficient to allege immediate jeopardy to species three hundred miles away. The record reflects that the Forest Service, through consultations with the Fish and Wildlife Service, has sought to offset small water depletions (less than twenty-five acre-feet annually) by contributing $95,000 toward the development of Platte River Basin recovery efforts. We acknowledge that some of the Coalition's allegations about the plight of the Platte River species are disturbing. There is no doubt the species face a dire situation; their very presence on the lists of endangered and threatened species means that they are in danger of extinction in a significant portion of their range or are likely to face such a danger in the foreseeable future. See 16 U.S.C. § 1532(6), (20). Nonetheless, we cannot say that the district court committed clear error in finding a lack of immediate jeopardy. On this record, the Coalition has not established that the Forest Service's inaction "has precisely the same impact on the rights of the parties as denial of relief," Thomas, 828 F.2d at 793, by placing the Platte River species in jeopardy of imminent extinction. Even while the Forest Service considers its options, the species retain strong protection against agency actions that are likely

---

[12](...continued)
just the complaint.

to jeopardize their continued existence or adversely modify their critical habitat. See 16 U.S.C. § 1536(a)(2).

### 3. There Is Little Immediate Impact from the Forest Service's Inaction

As noted above, the district court found that the listed species do not face immediate harm from the Forest Service's inaction. On the record before us, we cannot say that this amounts to clear error. The Coalition also seems to assert that some of its members will be subjected to further restrictions on their water use while the Forest Service studies the issue. This does not tip the balance in favor of finding ripeness. At best the immediate impact is uncertain. Given the lack of finality and the factual issues implicated, the possibility of short-term water-use restrictions is not enough to make this case fit for immediate judicial resolution.

### 4. Resolution of These Issues Will Not Promote Effective Administration

Finally, we conclude that addressing the merits of this case at the present time would not promote efficiency. To the contrary, the district court found that judicial involvement at this stage might impede the efforts of the Cooperative Agreement. The Department of the Interior and the Forest Service, with their specialized expertise, should be allowed a first chance to balance the competing

interests at stake and choose a course of action. That decision, once it is final, can be reviewed by the courts more effectively and efficiently.

5. Conclusion

The Forest Service's alleged inaction has not yet ripened into final agency action. In addition, this lawsuit raises factual questions and resolution at this time would likely impede rather than promote an effective conservation program for the Platte River species. Because we perceive little hardship in withholding judicial consideration at present, we hold that the case is not ripe for review.

**CONCLUSION**

The Coalition's challenge to the Forest Service's conservation program is not ripe for review under the Endangered Species Act, and we lack subject-matter jurisdiction over this case. Without jurisdiction, we may not comment on the merits; to the extent the district court ruled on the substance of § 1536(a)(1), we must vacate that decision. We AFFIRM the district court's dismissal for lack of ripeness and VACATE its dismissal on the merits.

- 19 -